UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-cv-62539 (DPG)(WCT)

FREDERICK SIEGMUND, Derivatively On
Behalf of LINKWELL CORPORATION,

Plaintiff,

v.

XUELIAN BIAN, WEI GUAN, SONG QIANG
CHEN, LING LI, METAMINING, INC.,
METAMINING NEVADA, INC.,
CD INTERNATIONAL ENTERPRISES, INC.,
CHINA DIRECT INVESTMENTS, INC.,
CAPITAL RESOURCE MANAGEMENT CO., LTD.,
and ECOLAB INC.,

Defendants,

-and-

LINKWELL CORPORATION,

Nominal Defendant.
_____/

**NOTICE OF APPEAL**

**NOTICE IS HEREBY GIVEN** that Plaintiff Frederick Siegmund ("Plaintiff"), by his

undersigned counsel, hereby appeals to the United States Court of Appeals for the Eleventh

Circuit from the: (1) Order denying Plaintiff's Motion to Strike and granting Defendants' Motion

to Dismiss for Lack of Standing entered on April 11, 2016 (DE No. 369); (2) Order denying

Plaintiff's Motions for Reconsideration of the April 6, 2016 and April 11, 2016 Orders entered

on June 8, 2016 (DE No. 391); (3) Endorsed Order denying Plaintiff's Motion for Leave to File

Fourth Amended Verified Shareholders Derivative and Class Action Complaint entered on

January 18, 2017 (DE No. 419) (paperless); and (4) Order sustaining Objections entered on April

6, 2016 (DE No. 365).  True and correct copies of the April 11, 2016, June 8, 2016 and April 6,

2016 Orders are annexed hereto as Exhibits 1, 2, and 3, respectively.

Dated: February 15, 2017

<div style="margin-left: 40%;">

**FISCHLER & FRIEDMAN, P.A.**

By:      /s/ Michael A. Fischler
Michael A. Fischler
Attorney Bar Number: 255531
1000 South Andrews Avenue
Fort Lauderdale, FL 33316
(954) 763-5778
michael@ffpa-law.com

**WOLF HALDENSTEIN ADLER
   FREEMAN & HERZ LLP**
Charles J. Hecht
Malcolm T. Brown
270 Madison Avenue
New York, NY 10016
(212) 545-4600
hecht@whafh.com
brown@whafh.com

*Attorneys for Plaintiff*

</div>

/791471

## CERTIFICATE OF SERVICE

I hereby certify that on February 15, 2017, I electronically filed a true and correct copy of

the foregoing document with the Clerk of the Court using the CM/ECF system.  The CM/ECF

system will deliver notification of filing of the above-referenced document(s) to the following

counsel of record:

| | |
|---|---|
| Michael R. Holt, Esq. | Richard G. Morgan, Esq. |
| Rumberger, Kirk & Caldwell, P.A. | Nathan J. Marcusen, Esq. |
| Brickell City Tower, Suite 3000 | Isaac W. Messmore, Esq. |
| 80 S.W. 8th Street | Bowman and Brooke LLP |
| Miami, FL 33130-3037 | 150 South Fifth Street, Suite 3000 |
| (305) 358-5577 | Minneapolis, MN 55402 |
| mholt@rumberger.com | (612) 339-8682 |
| | richard.morgan@bowmanandbrooke.com |
| | nathan.marcusen@bowmanandbrooke.com |
| | ike.messmore@bowmanandbrooke.com |
| | |
| Counsel for Defendant: | Counsel for Defendant: |
| Ecolab Inc. | Ecolab Inc. |

Samuel W. Braver, Esq.
Jesse H. Diner, Esq.
S. Carey Villeneuve, Esq.
Buchanan Ingersoll & Rooney PC
401 East Las Olas Blvd., Suite 2250
Fort Lauderdale, FL 33301
samuel.braver@bipc.com
jesse.diner@bipc.com
carey.villeneuve@bipc.com

Counsel for Defendants:
Xuelian Bian
Wei Guan

X. Bing Xu, Esq.                         Thomas Johnson, Esq.
The Bing Law Firm                        Law Office of Thomas Johnson, P.A.
5705 Hansel Avenue                       510 Vonderburg Drive, Suite 309
Orlando, FL 32809                        Brandon, FL 33511
(407) 851-1000                           (803) 654-7272
bing@binglawfirm.com                     tom@tjlawpa.com

Counsel for Defendants:                  Counsel for Defendants:
Song Qiang Chen                          Song Qiang Chen
Ling Li                                   Ling Li
Metamining, Inc.                         Metamining, Inc.
Metamining Nevada, Inc.                  Metamining Nevada, Inc.

I also certify that the foregoing document(s) is being served this date on the parties below

by first class mail:

CD International Enterprises, Inc.        China Direct Investments, Inc.
431 Fairway Drive                        431 Fairway Drive
Suite 200                                Suite 210
Deerfield Beach, FL 33441                Deerfield Beach, FL 33441

Capital Resource Management Co., Ltd.
c/o CD International Enterprises, Inc.
431 Fairway Drive
Suite 200
Deerfield Beach, FL 33441

/s/ Michael A. Fischler, Esq.
Michael A. Fischler
Attorney Bar Number: 255531

Case 0:12-cv-62539-DPG   Document 369   Entered on FLSD Docket 04/11/2016   Page 1 of 15
Case 0:12-cv-62539-DPG   Document 423-1   Entered on FLSD Docket 02/15/2017   Page 1 of 15
Case: 17-10769   Date Filed: 02/16/2017   Page: 5 of 38

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-62539-CIV-GAYLES/TURNOFF

FREDERICK SIEGMUND, *derivatively*
*on behalf of* LINKWELL CORPORATION,
 Plaintiff,

 v.

XUELIAN BIAN, et al.,
 Defendants,

 and

LINKWELL CORPORATION,
 Nominal Defendant.
_____/

## ORDER

**THIS CAUSE** comes before the Court on Defendants Xuelian Bian and Wei Guan's

Motion to Dismiss for Lack of Standing [ECF No. 325], Plaintiff Frederick Siegmund's Motion to

Strike the Defendants' Motion [ECF No. 332], and Defendant Ecolab, Inc.'s ("Ecolab") Motion

to Sever and Transfer [ECF No. 207]. The Court has considered the parties' briefs, the record, and

the applicable law and is otherwise fully advised in the premises. For the reasons that follow, this

action shall be dismissed as to all Defendants for lack of standing.

## I.   BACKGROUND

The Plaintiff, Frederick Siegmund, brought this shareholder derivative suit on behalf of

Nominal Defendant Linkwell Corporation ("Linkwell") to contest a reverse-merger transaction

that occurred in early 2012. Linkwell is a publicly traded Florida corporation with a principal

place of business in China. Until the end of 2011, Linkwell was in the business of developing,

manufacturing, selling, and distributing disinfectant healthcare products to the medical industry

in China through its direct subsidiaries. According to the allegations in the Third Amended

Case 0:12-cv-62539-DPG   Document 369   Entered on FLSD Docket 04/11/2016   Page 2 of 15
Case 0:12-cv-62539-DPG   Document 423-1   Entered on FLSD Docket 02/15/2017   Page 2 of 15
Case: 17-10769     Date Filed: 02/16/2017     Page: 6 of 38

Shareholders Derivative Complaint (the "Third Amended Complaint," the operative complaint in this action), the board of Linkwell caused Linkwell to acquire as a wholly owned subsidiary Defendant Metamining Nevada, Inc. ("Metamining Nevada")—a private shell company with no assets, operations, or meaningful prospects, but with over $11 million in financial obligations—in exchange for the transfer to Defendant Metamining, Inc. ("Metamining")—a privately held California mining development corporation—of over 9,000,000 shares of convertible preferred stock and 3,000,000 common stock warrants (approximately 88% of Linkwell's equity). Siegmund alleges that Linkwell's board also caused Linkwell to issue approximately 600,000 shares of convertible preferred stock and 10,000,000 shares of common stock (approximately 6% of Linkwell's equity) to Defendants China Direct Investments, Inc. ("China Direct"), and Capital One Resource Co., Ltd. ("Capital One")—wholly owned subsidiaries of Defendant CD International Enterprises, Inc., a Florida corporation that produces and distributes industrial commodities in China. China Direct and Capital One were both engaged by Linkwell, Metamining, and Metamining Nevada as "consultants" in connection with the transaction. The transaction was allegedly consummated to pay for certain unconfirmed real property and mining rights in Nevada.

Siegmund contends that Linkwell entered into this transaction for the sole purpose of benefitting its directors at the expense of the company and its shareholders. Siegmund also alleges that Linkwell's board of directors (along with the other Defendants in this action[1]) were aware of

---

[1] Defendants Xuelian and Wei, whose motion is presently before the Court, "became officers and directors of Linkwell in 2005. Xuelian was CEO, President, and Chairman of the Board of Directors, and Wei was Vice President and a member of the Board of Directors. On November 17, 2014, in response to [a] . . . discovery motion filed by the Plaintiff, Xuelian and Wei filed sworn declarations in which each testified that he resigned from his position as director and officer, effective July 18, 2014. [ECF Nos. 219-1 & 219-2]. They also provided Linkwell's corporate resolutions accepting those resignations." *Siegmund v. Xuelian*, No. 12-62539, 2016 WL 1359595, at *1 (S.D. Fla. Apr. 6, 2016).

The other Defendants not already named are Song Qiang Chen, Chairman of Metamining and Metamining Nevada, who became a Linkwell board member just prior to the approval of the complained-of transaction; Ling Li, President and co-founder of Metamining and Metamining Nevada, who also became a Linkwell board member just prior to the approval of the complained-of transaction; and Ecolab, Inc., whose relationship to this case is described more fully *infra*, Section I.B.

2

the purpose of the transaction and were also aware that Metamining was in no position to adequately compensate Linkwell for its shares.

Siegmund asserts, on behalf of Linkwell, derivative claims against the Defendants for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, constructive fraud, civil conspiracy, unjust enrichment, imposition of a constructive trust, and attorneys' fees. After the initial Complaint was filed, the merger between Linkwell and Metamining was unwound.

### A.    *Allegations Pertinent to Xuelian and Wei's Motion*

Siegmund filed and served the Third Amended Complaint on August 7, 2014. Five days later, Linkwell entered into a merger transaction with Leading World Corporation ("LWC"). On August 19, 2014, Jiang Zhu, the CEO of Linkwell, sent a letter to all shareholders of Linkwell describing the terms of the merger. Specifically, LWC would be merged into Linkwell, and Linkwell would survive the merger as a wholly owned subsidiary of Leading First Capital Limited, a British Virgin Islands corporation and the parent company of LWC. If consummated, each share of Linkwell stock would be converted into the right to receive $0.88 in cash.[2] The letter invited shareholders to a special meeting for the purposes of voting on the merger, to be held on September 19, 2014, in Shanghai, China, and encouraged them to vote in favor of the merger. *See* Diner Decl. Ex. A. The same was explained in a Notice of Special Meeting of Shareholders sent on the same day. *See id.* Ex. B.

Linkwell's board of directors also mailed a Proxy Statement to shareholders. The Proxy Statement outlined that upon completion of the merger with LWC all shares of Linkwell stock would be cancelled, shareholders would receive a cash payment for the total amount of their shares, and "holders of [Linkwell] common stock will no longer have any interest in, and will no

---

[2]    The letter stated that certain shares would not be subject to this cash conversion: shares owned by Linkwell, its subsidiaries, Leading First Capital, and LWC, as well as shares owned by any shareholders who had perfected and had not withdrawn a demand for appraisal rights under the Florida Business Corporation Act.

Case 0:12-cv-62539-DPG   Document 369   Entered on FLSD Docket 04/11/2016   Page 4 of 15
Case 0:12-cv-62539-DPG   Document 423-1   Entered on FLSD Docket 02/15/2017   Page 4 of 15
Case: 17-10769    Date Filed: 02/16/2017    Page: 8 of 38

longer be shareholders of, [Linkwell]." *Id.* Ex. C at 2. Linkwell's board of directors recommended that the shareholders vote in favor of the merger because of Linkwell's precarious financial situation. They described Linkwell's operating loss in 2014 and negative cash-flow position due to an increasing inability to recover accounts receivable or to obtain bank loans in China. The board also recommended that the shareholders vote for the merger because the per-share consideration they would receive represented nearly a 500% premium over Linkwell's closing prices on June 27, 2014 (the last trading day before the date of the merger agreement), and an approximately 650% premium over Linkwell's 120–trading day volume weighted average price as of August 12, 2014. Approval of the merger required the affirmative vote of the holders of at least a majority of the shares of Linkwell common stock present and entitled to vote at the special meeting, whether or not a quorum was present.

The merger was approved at the special meeting held on September 19, 2014. Defendants Xuelian and Wei were among those in attendance and voted their Linkwell shares in favor of the merger. Siegmund contends that shareholder approval would not have been possible without Xuelian and Wei voting their shares.[3] That same day, Linkwell filed Articles of Merger with the Florida Department of State, which reflect that a majority of Linkwell's shares voted to approve the merger with LWC and the merger was consummated. [ECF No. 216-1]. Per the Plan of Merger attached to the articles, on the effective date of the merger (*i.e.*, September 19, 2014) each issued and outstanding share of Linkwell common stock was cancelled and each holder of Linkwell shares had the right to receive the merger consideration of $0.88 per share. Siegmund alleges that the Articles of Merger did not become publicly available until October 26, 2014. He claims that he had no knowledge of the potential transaction before that date, and that he was never

---

[3]   According to the attendance sheet for the special meeting, Xuelian and Wei beneficially owned 233,618 of the total 345,508 Linkwell shares voted to approve the merger.

Case 0:12-cv-62539-DPG Document 369 Entered on FLSD Docket 04/11/2016 Page 5 of 15
Case 0:12-cv-62539-DPG Document 423-1 Entered on FLSD Docket 02/15/2017 Page 5 of 15
Case: 17-10769 Date Filed: 02/16/2017 Page: 9 of 38

provided with notice of the special meeting, as required by Fla. Stat. § 607.0705, or the Plan of Merger, the Proxy Statement, or a copy of the merger agreement.

Defendants Xuelian and Wei filed a motion to dismiss for lack of standing on October 8, 2015. They attached to that motion Siegmund's stock brokerage account statements, which Siegmund had previously produced in response to a discovery request. These account statements reflect that all of Siegmund's Linkwell shares were sold on November 6, 2014, as a result of the LWC merger, and that he received the $0.88 per share merger consideration in exchange (500 shares at $0.88 per share, for a total payment of $440.00). *See* Diner Decl. Ex. D. Xuelian and Wei assert that, as a result of the merger, Siegmund is no longer a Linkwell shareholder, and thus, he no longer has standing to maintain this derivative action. Siegmund opposes the motion.

Prior to filing his response, Siegmund filed a motion to strike, raising several arguments. First, he claims that Xuelian and Wei's motion to dismiss should be stricken because it was filed more than a year after they filed their answer. Second, he argues that the motion is premature because it relies on factual matter outside the Third Amended Complaint. Xuelian and Wei oppose Siegmund's motion.

### B. *Allegations Pertinent to Ecolab's Motion*

Siegmund alleges that on February 15, 2008, Defendant Ecolab—a Delaware corporation that, *inter alia*, develops and markets cleaning and sanitizing products to a variety of sectors— purchased a 10% stake in Linkwell Tech Group., Inc. ("Linkwell Tech"), a Linkwell subsidiary. On May 30, 2008, Ecolab, Linkwell, and Linkwell Tech entered into an agreement whereby Ecolab acquired 888,889 shares of Linkwell Tech's common stock (the "Stockholders Agreement") [ECF No. 213-2]. Ecolab obtained a "put" option and a "call" option under the Stockholders Agreement. The put option required Linkwell to, upon the occurrence of certain agreed-upon conditions, repurchase all of the Linkwell Tech common stock that had been acquired by

Case 0:12-cv-62539-DPG   Document 369   Entered on FLSD Docket 04/11/2016   Page 6 of 15
Case 0:12-cv-62539-DPG   Document 423-1   Entered on FLSD Docket 02/15/2017   Page 6 of 15
Case: 17-10769     Date Filed: 02/16/2017     Page: 10 of 38

Ecolab. Stockholders Agreement § 4.1. Conversely, if Linkwell underwent a change of control, the call option required Linkwell to sell all of the shares it owned in any or all of its subsidiaries, including Linkwell Tech, to prevent the dilution of Ecolab's interest. *Id.* § 4.2. The Stockholders Agreement contained a forum selection clause, which provides, in part:

> Any action or proceeding arising out of or relating to this Agreement or the trans-
> actions contemplated by this Agreement must be brought in the courts of the State
> of Minnesota, County of Ramsey, or, if it has or can acquire jurisdiction, in the
> United States District Court for the District of Minnesota.

*Id.* § 13.12.

On March 6, 2012, Linkwell underwent a "change of control," *i.e.*, the alleged reverse-merger transaction with Metamining. Rather than exercise its call option, on April 22, 2013, Ecolab entered into an agreement with Linkwell (the "Redemption Agreement") whereby Linkwell agreed to repurchase all of the Linkwell Tech stock originally sold to Ecolab [ECF No. 150-3]. The Redemption Agreement also required any action or proceeding arising out of or relating to the agreement be brought in Minnesota state or federal court. Redemption Agreement § 19.

Siegmund's claims against Ecolab arise from the contention that Ecolab aided and abetted Linkwell's board members in breaching their fiduciary duties to the corporation by secretly acquiring the equity of Linkwell's subsidiary disinfectant businesses: Linkwell Tech; Shanghai Likang Disinfectant High Tech Co., Ltd.; and Shanghai Likang Biological Hi-Tech Co., Ltd. (the "Linkwell Subsidiaries"). According to Siegmund, Ecolab was also aware of all material terms of the reverse merger with Metamining, including the requirement that Linkwell needed to be a clean shell company with no assets in order for the reverse merger to be consummated.[4] Ecolab purportedly purchased the Linkwell Subsidiaries from Linkwell in order to pave the way for the merger. Siegmund further alleges that Ecolab's SEC filings reflected the acquisition of the

---

[4]   The rationale for having Linkwell exist as a clean public shell was that once Metamining acquired control of
      Linkwell, Metamining (a private entity) would also have access to public funds because of Linkwell's designation
      as a public company.

Case 0:12-cv-62539-DPG   Document 369   Entered on FLSD Docket 04/11/2016   Page 7 of 15
Case 0:12-cv-62539-DPG   Document 423-1   Entered on FLSD Docket 02/15/2017   Page 7 of 15
Case: 17-10769   Date Filed: 02/16/2017   Page: 11 of 38

Linkwell Subsidiaries. Given that the sale of the Linkwell Subsidiaries would also have to be disclosed to Linkwell's shareholders, Siegmund claims that Ecolab was complicit in the transaction and fully intended to assist Linkwell's directors in breaching their fiduciary duties. Ecolab disputes these allegations, arguing that Siegmund incorrectly arrived at the conclusion that Ecolab purchased the Linkwell Subsidiaries based on 2012 Ecolab SEC filings that listed those entities as subsidiaries of *Ecolab*. Ecolab states that it amended these filings in 2014 to clarify that the Linkwell Subsidiaries were inadvertently included on the list of Ecolab subsidiaries.[5]

Of the seven counts in the Third Amended Complaint, Siegmund alleges four against Ecolab: aiding and abetting breach of fiduciary duty, unjust enrichment, imposition of a constructive trust, and attorneys' fees. On October 1, 2014, Ecolab filed a motion to sever and transfer, requesting that this Court enforce the forum selection clause in the Stockholders Agreement, sever the claims against it from this action, and transfer those claims to the U.S. District Court for the District of Minnesota. Siegmund opposes the motion.

## II.  DISCUSSION

### A.  *Standing Motions Generally*

"Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under [Federal Rule of Civil Procedure] 12(b)(1)." *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203 n.42 (11th Cir. 1991). A motion to dismiss for lack of subject matter jurisdiction may present either a facial or a factual challenge to the complaint. *See McElmurray v. Consol. Gov't*, 501 F.3d 1244, 1251 (11th Cir. 2007). In a facial challenge, a court is required only to determine if the plaintiff has "sufficiently alleged a basis for subject matter jurisdiction." *Id.* at 1251. Furthermore, "the court must consider the allegations in

---

[5]  While the list of its subsidiaries was updated, Siegmund alleges that Ecolab has not updated its financial statements to exclude any gains that may have been a result of its purported acquisition of the Linkwell Subsidiaries.

Case 0:12-cv-62539-DPG Document 369 Entered on FLSD Docket 04/11/2016 Page 8 of 15
Case 0:12-cv-62539-DPG Document 423-1 Entered on FLSD Docket 02/15/2017 Page 8 of 15
Case: 17-10769 Date Filed: 02/16/2017 Page: 12 of 38

the plaintiff's complaint as true." *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981).[6] By contrast, a factual attack "challenge[s] 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings . . . are considered.'" *McElmurray*, 501 F.3d at 1251 (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). In a factual attack, "no presumptive truthfulness attaches to [a] plaintiff's allegations," *Lawrence*, 919 F.2d at 1529 (citation and internal quotation marks omitted), and the plaintiff bears the burden to prove the facts sufficient to establish subject matter jurisdiction, *see OSI, Inc. v. United States*, 285 F.3d 947, 951 (11th Cir. 2002).

## B. *The Plaintiff's Motion to Strike Fails*

In Siegmund's motion to strike, he argues that Xuelian and Wei's motion to dismiss is improper, untimely, and should be stricken because the parties are in the midst of discovery and the Defendants filed their answer more than a year ago. These arguments are nonstarters.

As an initial matter, Siegmund's own motion is not proper. Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a *pleading* an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f) (emphasis added). "[N]umerous courts in the Eleventh Circuit, and elsewhere, have held that a motion to strike filings that are not pleadings (as defined by Rule 7(a)) is improper." *Keira v. Kerry*, No. 1360990, 2013 WL 5416900, at *1 (S.D. Fla. Sept. 26, 2013); *see also Weiss v. PPG Indus., Inc.*, 148 F.R.D. 289, 292 (M.D. Fla. 1993) ("A motion is not a pleading, and thus a motion to strike a *motion* is not proper under [Rule] 12(f)." (emphasis in original)). Xuelian and Wei's motion is not a pleading, so it is not capable of being stricken under this Rule.

---

[6] The Eleventh Circuit has adopted as binding precedent all decisions of the former Fifth Circuit rendered before October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

Case 0:12-cv-62539-DPG   Document 369   Entered on FLSD Docket 04/11/2016   Page 9 of 15
Case 0:12-cv-62539-DPG   Document 423-1   Entered on FLSD Docket 02/15/2017   Page 9 of 15
Case: 17-10769     Date Filed: 02/16/2017     Page: 13 of 38

Beyond this procedural deficiency, Siegmund's motion is substantively deficient, as well. "[A] party may move to dismiss for lack of subject-matter jurisdiction at any time. And if 'the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.'" *Douglas v. United States*, 814 F.3d 1268, 1280-81 (11th Cir. 2016) (quoting Fed. R. Civ. P. 12(h)(3)) (citations omitted). While questions of standing should be raised at the earliest possible opportunity, *see Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999), subject matter jurisdiction cannot be conferred or waived "by failing to challenge jurisdiction early in the proceedings," *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982). Xuelian and Wei's motion to dismiss for lack of subject matter jurisdiction would be timely filed whenever they chose to file it.

Siegmund also argues that the Xuelian and Wei's motion is premature because their request for dismissal is based on facts outside the four corners of the Third Amended Complaint. If these Defendants were launching a facial attack on the Court's subject matter jurisdiction, this argument could potentially have merit. However, Xuelian and Wei asserted in their briefing that this is a factual attack on subject matter jurisdiction. It is also obvious to the Court, given the wealth of outside factual material attached to their motion, that these Defendants have indeed asserted a *factual* attack on this Court's subject matter jurisdiction. So the Court properly considers matters outside the pleadings. For these several reasons, Siegmund's motion to strike shall be denied.

## C.     *The Plaintiff Lacks Standing to Maintain This Derivative Action*

On the issue of derivative standing, "[u]nder both federal and Florida law, a plaintiff bringing a shareholder derivative suit must be a shareholder when the action as brought and throughout the course of the litigation." *Hantz v. Belyew*, 194 F. App'x 897, 898 (11th Cir. 2006) (per curiam). A detailed look into the three principal cases interpreting this so-called "continuous ownership" rule is instructive in guiding the Court's analysis.

Case 0:12-cv-62539-DPG   Document 369   Entered on FLSD Docket 04/11/2016   Page 10 of 15
Case 0:12-cv-62539-DPG   Document 423-1   Entered on FLSD Docket 02/15/2017   Page 10 of
Case: 17-10769     Date Filed: 02/16/2017     Page: 14 of 38

First, in *Schilling v. Belcher*, 582 F.2d 995, 999 (5th Cir. 1978), the former Fifth Circuit explained that Federal Rule of Civil Procedure 23.1, which, in part, governs standing in derivative actions, "contains two discrete standing requirements: (1) the plaintiff must have owned stock in the defendant corporation at the time of the transaction of which he complains, the . . . 'contemporaneous ownership' requirement, and (2) the plaintiff must be a shareholder of the defendant corporation at the time suit is brought." Under these requirements, "[o]nly a shareholder, by virtue of his 'proprietary interest in the corporate enterprise'" is permitted to "step into the corporation's shoes and . . . seek in its right the restitution he could not demand in his own." *Id.* (quoting *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 321 (1936); *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 548 (1949)). The court noted that "the ownership requirement continues throughout the life of the suit and that the action will abate if the plaintiff ceases to be a shareholder before the litigation ends." *Id.*

Second, in *Timko v. Triarsi*, 898 So. 2d 89 (Fla. 5th DCA 2005), the sole Florida decision addressing this specific issue, the plaintiff, a shareholder of a closely held corporation, commenced a shareholder derivative suit against that corporation. He later initiated a separate proceeding, pursuant to Florida statute, to dissolve the corporation. In response to the dissolution proceeding, one defendant exercised his statutory right to purchase all of the plaintiff's shares. Following that purchase, the trial judge presiding over the derivative suit determined that the plaintiff lacked standing to proceed and granted the defendants' motion to dismiss. On appeal, Florida's Fifth District Court of Appeal looked to Florida's statutory "contemporaneous stock ownership rule," which provides that an individual "***may not*** commence a proceeding in the right of a . . . corporation ***unless*** the person was a shareholder of the corporation when the transaction complained of occurred." Fla. Stat. § 607.07401(1) (emphasis added). Because, the court reasoned, that statute did not create a right of action, it "recognize[d] the pre-existence of [a] common law right." *Timko*,

Case 0:12-cv-62539-DPG  Document 369  Entered on FLSD Docket 04/11/2016  Page 11 of 15
Case 0:12-cv-62539-DPG  Document 423-1  Entered on FLSD Docket 02/15/2017  Page 11 of 15
Case: 17-10769  Date Filed: 02/16/2017  Page: 15 of 38

898 So. 2d at 91. The Florida Legislature's use of the phrase "may not" and the word "unless" reflected its "intent to place additional limits upon this preexisting right to ensure that a plaintiff's stake in the lawsuit is 'legitimate,' meaning an ***ownership*** interest that is not acquired for predatory purposes." *Id.* (emphasis in original). Adoption of the statute did not vitiate "[t]he requirement of some continuous stake in the corporation." *Id.* Based on this, the court held that "a plaintiff in a derivative suit, in addition to meeting the requirements of the statute, must meet the common law requirement of continuous ownership throughout the pendency of the suit." *Id.* Because the plaintiff had lost his shares as a result of one defendant exercising his statutory right to purchase them in response to the plaintiff's dissolution action, he no longer had standing to maintain the derivative suit.

And third, in *Hantz v. Belyew*, 194 F. App'x 897, a federal district court dismissed the plaintiffs' derivative suit for lack of standing after it found that the plaintiffs lost their common stock in the corporation when a bankruptcy court confirmed the corporation's reorganization plan. On appeal, the Eleventh Circuit, in an unpublished opinion, recognized that under both federal and Florida law, a plaintiff bringing a shareholder derivative suit must be a shareholder when the action is brought and throughout the course of the litigation. *Id.* at 898. Because the plaintiffs there no longer owned stock in the corporation, they clearly did not satisfy this requirement. The plaintiffs urged the court to adopt an exception to the continuous ownership rule where the loss of stock was involuntary. In support, they cited several cases from other jurisdictions in which plaintiffs "sought to challenge the propriety of mergers" where a corporation's directors divested them of their stock to "insulate the directors' conduct from judicial review." *Id.* at 899. Based on the facts of the case, the court found it unnecessary "to determine if such an exception exists" or to determine whether it applied to the plaintiffs. *Id.* at 899. Involuntariness alone was insufficient to justify an exception to the rule. Furthermore, the plaintiffs' cited cases turned on redressability,

Case 0:12-cv-62539-DPG   Document 369   Entered on FLSD Docket 04/11/2016   Page 12 of 15
Case 0:12-cv-62539-DPG   Document 423-1   Entered on FLSD Docket 02/15/2017   Page 12 of 15
Case: 17-10769      Date Filed: 02/16/2017      Page: 16 of 38

which was not at issue in *Hantz*, as the bankruptcy proceedings had provided the plaintiffs with a judicial forum in which they could air their grievances.

Considering the above three cases, the Court finds that Siegmund fails to satisfy the continuous ownership rule because he no longer owns Linkwell stock, and a dismissal of this suit for lack of standing is justified. Like the plaintiffs in *Hantz*, Siegmund advocates for the creation or recognition of an exception to the continuous ownership rule in this case.[7] He contends that the boards of Linkwell and LWC approved the merger agreement shortly after Xuelian and Wei were served in this action for the principal purpose of terminating his pending derivative claims to divest this Court of jurisdiction. Siegmund argues that Delaware law recognizes such an exception, *see, e.g.*, *Lewis v. Ward*, 852 A.2d 896, 902 (Del. 2004), and because "Florida courts have relied upon Delaware corporate law to establish their own corporate doctrines," this Court should look to Delaware law to recognize an exception here. [ECF No. 333 at 11] (quoting *Klein v. FPL Grp., Inc.*, No. 02-20170, 2004 WL 302292, at *16 n.27 (S.D. Fla. Feb. 5, 2004)) (internal quotation marks omitted).

Siegmund's argument is unavailing. The U.S. Supreme Court "repeatedly has held that state courts are the ultimate expositors of state law," and this Court is therefore "bound by their constructions except in extreme circumstances" (*e.g.*, where an interpretation of state law "appears to be an 'obvious subterfuge to evade consideration of a federal issue'"). *Mullaney v. Wilbur*, 421 U.S. 684, 691 & n.11 (1975) (quoting *Radio Station WOW, Inc. v. Johnson*, 326 U.S. 120, 129 (1945)). No such subterfuge, obvious or otherwise, is present here. This Court will not contravene or otherwise disturb the only controlling decision of a Florida appellate court ruling on an issue of Florida law by importing and enforcing an exception from Delaware or from any other jurisdiction,

---

[7]   Siegmund improperly frames his argument by foisting onto the Defendants the burden to show that an exception to the continuous ownership rule *does not* apply. But considering that there is no exception to the continuous ownership rule under current Florida law, the burden would be on Siegmund to show that such exception exists.

Case 0:12-cv-62539-DPG   Document 369   Entered on FLSD Docket 04/11/2016   Page 13 of 15
Case 0:12-cv-62539-DPG   Document 423-1   Entered on FLSD Docket 02/15/2017   Page 13 of 15
Case: 17-10769   Date Filed: 02/16/2017   Page: 17 of 38

regardless of how often Florida courts have looked to Delaware corporate law for myriad unrelated purposes.

The Court recognizes that the timing of the Linkwell–LWC merger in relation to service of the Third Amended Complaint on certain Defendants in this action is suspect, especially when viewed in the light of Siegmund's allegations that he never received information regarding the merger, the notice of special meeting, the Proxy Statement, or notice of the merger until long after its consummation. That said, the continuous ownership requirement for standing to bring a derivative action, as set forth in *Schilling*, remains the law in this Circuit. Similarly, the Florida Supreme Court has not overruled *Timko*'s recognition of the continuous ownership rule under Florida law; nor has it created any exception to the *Timko* rule. Finally, while the court in *Hantz* discussed a possible exception to this rule, such as the one Siegmund seeks to apply here, it did not create or apply that exception. The other non-binding, factually distinguishable cases Siegmund cites do not persuade.

In the absence of a binding ruling to the contrary from the Eleventh Circuit or a definitive statement of the law from the Florida Supreme Court, this Court is unwilling to create an exception to a well-settled rule. The motion to dismiss for lack of standing shall, accordingly, be granted.[8]

## D.   *The Court Need Not Analyze Ecolab's Motion to Sever and Transfer*

Having ruled that Siegmund lacks standing to pursue this action, the Court turns, finally, to Ecolab's motion to sever and transfer. "If . . . a court can readily determine that it lacks juris-diction over the cause . . . , the proper course [is] to dismiss on that ground." *Sinochem Int'l Co.*

---

[8]   Siegmund argues that a recommendation by the Magistrate Judge in March 2015 that the "pre-merger status of Linkwell be preserved"—a recommendation to which Linkwell did not object—forecloses the Defendants' motion. Pl.'s Opp'n at 16. This argument falls flat for two reasons. First, this Court has not adopted the Magistrate Judge's recommendation. Second, and far more importantly, parties cannot create subject matter jurisdiction by agreement or concession, *Sosna v. Iowa*, 419 U.S. 393, 398 (1975), nor can a court create subject matter jurisdiction where it does not otherwise exist, *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999). *See also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101-02 (1998) ("For a court to pronounce upon [the merits] when it has no juris-diction to do so is, by very definition, for a court to act ultra vires.").

Case 0:12-cv-62539-DPG   Document 369   Entered on FLSD Docket 04/11/2016   Page 14 of 15
Case 0:12-cv-62539-DPG   Document 423-1   Entered on FLSD Docket 02/15/2017   Page 14 of 15
Case: 17-10769   Date Filed: 02/16/2017   Page: 18 of 38

*v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 436 (2007). Because Siegmund does not have standing to bring his derivative action, there is no reason to undergo a full analysis of Ecolab's arguments regarding *forum non conveniens* as it applies (or does not apply) to the forum selection clause in the Stockholders Agreement. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 587 (1999) (noting that it is often most efficient to address questions of standing and subject matter jurisdiction prior to a case's merits). Nor should the Court burden a Minnesota court with a separate derivative action brought against only Ecolab when it has already concluded that subject matter jurisdiction is lacking. As a result, the Court "properly takes the less burdensome course," *Sinochem*, 549 U.S. at 436, in vacating its prior order granting Ecolab's motion to sever and transfer and dismissing the claims against it for lack of standing along with all other claims against all other Defendants.

## III.   CONCLUSION

Despite Siegmund's allegations of foul play vis-à-vis the mid-litigation merger between Linkwell and LWC, which resulted in the cancellation of his Linkwell shares, the fact remains that he is inarguably no longer a Linkwell shareholder. Therefore, under current Florida and federal law, Siegmund no longer has standing to maintain this derivative suit.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

(1)     the Plaintiff's Motion to Strike the Defendants' Motion for Lack of Standing [ECF No. 332] is **DENIED**;

(2)     the Court's Endorsed Order [ECF No. 323], dated September 29, 2015, granting Defendant Ecolab, Inc.'s Motion to Sever and Transfer [ECF No. 207] is **VACATED**; and

(3)     Defendants Xuelian Bian and Wei Guan's Motion to Dismiss for Lack of Standing [ECF No. 325] is **GRANTED**. The Third Amended Verified Shareholders

Case 0:12-cv-62539-DPG   Document 369   Entered on FLSD Docket 04/11/2016   Page 15 of 15
Case 0:12-cv-62539-DPG   Document 423-1   Entered on FLSD Docket 02/15/2017   Page 15 of 15
Case: 17-10769     Date Filed: 02/16/2017     Page: 19 of 38

Derivative Complaint [ECF No. 187] is **DISMISSED WITHOUT PREJUDICE** as to all Defendants.

This action is **CLOSED**, and all pending motions are **DENIED AS MOOT**.[9]

**DONE AND ORDERED** in Chambers at Miami, Florida, this 11th day of April, 2016.

DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

---

[9]  The Court's Endorsed Order [ECF No. 362], dated March 31, 2016, regarding the Plaintiff's Motion for Determination of Costs and Fees [ECF No. 273] remains in effect.

Case 0:12-cv-62539-DPG   Document 391   Entered on FLSD Docket 06/08/2016   Page 1 of 12
Case 0:12-cv-62539-DPG   Document 423-2   Entered on FLSD Docket 02/15/2017   Page 1 of 12
Case: 17-10769    Date Filed: 02/16/2017    Page: 20 of 38

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-62539-CIV-GAYLES/TURNOFF

FREDERICK SIEGMUND, *derivatively*
*on behalf of* LINKWELL CORPORATION,
Plaintiff,

v.

XUELIAN BIAN, et al.,
Defendants,

and

LINKWELL CORPORATION,
Nominal Defendant.

_____/

## ORDER

**THIS CAUSE** comes before the Court on Plaintiff Frederick Siegmund's Motion for

Reconsideration of Order Dismissing Action for Lack of Standing [ECF No. 373] and Motion

for Reconsideration of Order Sustaining Objections and Reversing April 10, 2015 Order [ECF

No. 371]. He seeks reconsideration of this Court's Order of April 11, 2016 [ECF No. 369] (the

"April 11 Order"), in which the Court granted Defendants Xuelian Bian and Wei Guan's motion

to dismiss for lack of standing [ECF No. 325]. He also seeks reconsideration of this Court's Order

of April 6, 2016 [ECF No. 365] (the "April 6 Order"), in which the Court sustained Xuelian and

Wei's objections to Magistrate Judge William C. Turnoff's Order of April 10, 2015 [ECF No. 265]

and reversed the Magistrate Judge's order. The Court has considered the Orders, the parties'

briefs, the record, and the applicable law and is otherwise fully advised in the premises.

"[R]econsideration of a previous order is an extraordinary remedy, to be employed spar-

ingly." *Williams v. Cruise Ships Catering & Serv. Int'l, N.V.*, 320 F. Supp. 2d 1347, 1358 (S.D.

Fla. 2004). The only grounds for granting a motion for reconsideration, pursuant to Federal Rule

Case 0:12-cv-62539-DPG Document 391 Entered on FLSD Docket 06/08/2016 Page 2 of 12
Case 0:12-cv-62539-DPG Document 423-2 Entered on FLSD Docket 02/15/2017 Page 2 of 12
Case: 17-10769 Date Filed: 02/16/2017 Page: 21 of 38

of Civil Procedure 59(e), are (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct manifest errors of law or fact. *See Douglas Asphalt Co. v. QORE, Inc.*, 657 F.3d 1146, 1151-52 (11th Cir. 2011); *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007). "[A] Rule 59(e) motion [cannot be used] to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Michael Linet, Inc. v. Village of Wellington*, 408 F.3d 757, 763 (11th Cir. 2005). "This prohibition includes new arguments that were 'previously available, but not pressed.'" *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 957 (11th Cir. 2009) (quoting *Stone v. Wall*, 135 F.3d 1438, 1442 (11th Cir. 1998) (per curiam)). Finally, "[a] motion for reconsideration is not an appeal, and thus it is improper on a motion for reconsideration to ask the Court to rethink what the Court has already thought through—rightly or wrongly." *Armbuster v. Rosenbloom*, No. 15-0114, 2016 WL 1441467, at *1 (S.D. Ga. Apr. 11, 2016) (citation and internal punctuation omitted).

The Court previously gave a comprehensive recitation of the underlying facts in its Orders (*see* April 11 Order at 1-7; April 6 Order at 1-3), but will provide below the relevant facts pertaining to the instant motions.

## I.    APRIL 11 ORDER

The Plaintiff, Frederick Siegmund, brought a shareholder derivative suit on behalf of Nominal Defendant Linkwell Corporation ("Linkwell") to contest a reverse-merger transaction that occurred in early 2012 but was later unwound. In 2014, Linkwell entered into a second, separate merger transaction with Leading World Corporation ("Leading World"). Once consummated, that merger resulted in, *inter alia*, the cancellation of Siegmund's Linkwell shares. After discovery revealed that Siegmund no longer owned shares in Linkwell, Defendants Xuelian and Bian filed a motion to dismiss for lack of standing on October 8, 2015, arguing that because Siegmund no longer had standing to maintain the derivative suit because he was no longer a

Case 0:12-cv-62539-DPG   Document 391   Entered on FLSD Docket 06/08/2016   Page 3 of 12
Case 0:12-cv-62539-DPG   Document 423-2   Entered on FLSD Docket 02/15/2017   Page 3 of 12
Case: 17-10769     Date Filed: 02/16/2017     Page: 22 of 38

Linkwell shareholder after the merger. After careful consideration of the motion and a review of pertinent governing federal and Florida state law, the Court agreed. *See* April 11 Order at 9-13. Siegmund timely filed his motion for reconsideration.

Siegmund argues for reconsideration on two grounds: first, that the Court "ignore[d]" a Florida appellate court case that he relied on in his opposition to the motion to dismiss and, second, that the Court did not address whether the Linkwell–Leading World merger complied with Florida law. The Court addresses each argument in turn.

### A.   *The Court Was Not Required to Address the Specific Case the Plaintiff Cited in His Brief*

The thrust of Siegmund's opposition to Xuelian and Wei's motion to dismiss for lack of standing was that this Court should create an exception to the rule that "[u]nder both federal and Florida law, a plaintiff bringing a shareholder derivative suit must be a shareholder when the action is brought and throughout the course of the litigation." *Hantz v. Belyew*, 194 F. App'x 897, 898 (11th Cir. 2006) (per curiam). Specifically, Siegmund urged the Court to adopt an exception, recognized by **Delaware** courts under **Delaware** law, that where a merger that divests a derivative plaintiff of his shares is subject to a claim of fraud, the fact that he no longer owns shares in the corporation **because** of that merger does not in turn divest the court of subject matter jurisdiction. *See* [ECF No. 333 at 11]. He argued that "Florida courts have relied upon Delaware corporate law to establish their own corporate doctrines." *Id.* (citation and internal quotation marks omitted). One of the cases Siegmund cited in support of this proposition was *Williams v. Stanford*, 977 So. 2d 722, 727 (Fla. 1st DCA 2008), which he believed was "instructive" on the issue of whether this Court should adopt the Delaware exception to the continuous ownership rule. *See* [ECF No. 333 at 11-12]. The Court reviewed *Williams* in its consideration of the motion to dismiss but found it to be inapposite, as it did not involve the continuous ownership rule at all. Rather, the Florida

3

Case 0:12-cv-62539-DPG Document 391 Entered on FLSB Docket 06/08/2016 Page 4 of 12
Case 0:12-cv-62539-DPG Document 423-1 Entered on FLSB Docket 02/15/2017 Page 4 of 12
Case: 17-10769    Date Filed: 02/16/2017    Page: 23 of 38

appellate court in that case adopted the Delaware Chancery Court's interpretation of the "fraud or material representation" exception found in the most recent version of Florida's "appraisal rights" statute, Fla. Stat. § 607.1302(4)(b), when, at that time, "no Florida court ha[d] had occasion to interpret the governing provisions of section 607.1302 in its 2003 form." *Williams*, 977 So. 2d at 727. As *Williams* addressed different factual and legal issues than those present in this matter, the Court elected not to address the case in its analysis. *See Ocean View Towers Ass'n, Inc. v. QBE Ins. Corp.*, No. 11-60447, 2012 WL 8569, at *2 (S.D. Fla. Jan. 1, 2012) ("The Court need not discuss every case cited by the parties especially where the cases address different factual and legal issues."); *Dungan v. Chase Home Fin., LLC*, No. 10-14549, 2011 WL 4737581, at *1 (E.D. Mich. Oct. 7, 2011) ("A court need not address every case cited by a party.").

Siegmund takes great issue with the fact that the Court did not explicitly mention *Williams* in the April 11 Order. But "courts are not required to address every case cited by a litigant, and declining to distinguish a particular non-controlling decision can hardly constitute an abuse of discretion." *Biltcliffe v. CitiMortgage, Inc.*, 772 F.3d 925, 930 (1st Cir. 2014). Granted, as this is a diversity case and no controlling decision from the Florida Supreme Court exists, the Court is "obligated to follow decisions from the Florida intermediate appellate courts unless there is some persuasive indication that the Supreme Court would decide the case differently." *Raie v. Cheminova, Inc.*, 336 F.3d 1278, 1280 (11th Cir. 2003). That said, the Court determined that *Williams* is neither apposite nor controlling in this instance, because it is both factually and legally distinguishable from the issues raised by the motion to dismiss. The Court read and considered Siegmund's arguments and—following an apposite decision of the Florida intermediate appellate courts, *Timko v. Triarsi*, 898 So. 2d 89 (Fla. 5th DCA 2005)—issued an order that addressed the material issues that bore on the proper resolution of the motion to dismiss. More is not required.

Case 0:12-cv-62538-DPG Document 391 Entered on FLSB Docket 06/08/2016 Page 5 of 12
Case 0:12-cv-62539-DPG Document 423-2 Entered on FLSB Docket 02/15/2017 Page 5 of 12
Case: 17-10769 Date Filed: 02/16/2017 Page: 24 of 38

*See Chloe SAS v. Sawabeh Info. Servs. Co*, No. 11-4147, 2013 WL 901986, at *5 (C.D. Cal. Jan. 31, 2013).

Siegmund also asserts that this Court has somehow "misapprehended" or "ignored" "relevant authority" by declining to address *Williams*. Quite the contrary. The Court did not misapprehend or ignore *Williams*; it just did not agree with Siegmund's argument that it should be followed to create a heretofore unrecognized exception to a common law rule. *See Tersigni v. Wyeth*, 817 F.3d 364, 369 (1st Cir. 2016) (stating that a federal court applying state law is "bound to apply state law as it exists, not as it may become, or as the plaintiff wishes it to be" (citing *Ryan v. Royal Ins. Co. of Am.*, 916 F.2d 731, 744 (1st Cir. 1990) ("We have warned, time and again, that litigants who reject a state forum in order to bring suit in federal court under diversity jurisdiction cannot expect that new trails will be blazed . . . . We may, perhaps, be unadventurous in our interpretation of [state] law, but a plaintiff who seeks out a federal venue in a diversity action should seek no more." (citation and internal quotation marks omitted)))).

Siegmund's present arguments based on *Williams* were already made and were already rejected. He is not permitted to relitigate old matters on a motion for reconsideration, and he is certainly barred from raising new arguments or new legal theories based on *Williams* or any other case, because he has not established that any of those arguments could not have been made prior to entry of the April 11 Order. *See Michael Linet, Inc.*, 408 F.3d at 763.[1]

## B.   *The Plaintiff's Argument that the Merger is Void or Voidable is Barred*

Siegmund's second proposed ground for reconsideration is that the Court failed to address whether the Linkwell–Leading World merger complied with Florida law. He argues now that the merger is void or voidable.

---

[1]   The foregoing discussion applies equally to Siegmund's arguments raising his citation to *Foreclosure FreeSearch, Inc. v. Sullivan*, 12 So. 3d 771 (Fla. 4th DCA 2009). *See* [ECF No. 373 at 3-4].

Case 0:12-cv-62539-DPG   Document 391   Entered on FLSB Docket 06/08/2016   Page 6 of 12
Case 0:12-cv-62539-DPG   Document 423-2   Entered on FLSB Docket 02/15/2017   Page 6 of 12
Case: 17-10769    Date Filed: 02/16/2017    Page: 25 of 38

In his opposition to the motion to dismiss, Siegmund alleged that Linkwell failed to provide

Siegmund notice of the Special Meeting of Shareholders prior to the merger, in contravention of

Fla. Stat § 607.1103 and § 607.0705. He argued that the failure to satisfy the notice requirement of

those statutes "warranted" application of the Delaware exception to Florida's continuous ownership

rule. *See* [ECF No. 333 at 12-14]. This recitation constitutes the entirety of Siegmund's argu-

ment on the issue. He never argued that the Linkwell–Leading World Merger was invalid, and he

never once used the words "void" or "voidable."[2]

The governing standard on a motion for consideration is clear that the prohibition on rais-

ing argument that could have been raised prior to the entry of judgment "includes new arguments

that were previously available, but not pressed." *Wilchombe*, 555 F.3d at 957 (citation and internal

quotation marks omitted). "There is no burden upon the district court to distill every potential

argument that could be made based upon the materials before it . . . ." *Resolution Trust Corp. v.

Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995). Indeed, a "party who aspires to oppose a . . .

motion must spell out his arguments squarely and distinctly, or else forever hold his peace."

*Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 260 (1st Cir. 1999). The onus is not

on the Court to have inferred an argument that the Linkwell–Leading World merger should be

held void or voidable based solely on Siegmund citing to the notice statute in his opposition and

citing Linkwell's lack of compliance with that specific provision as support for the unrelated

argument that the Court should adopt Delaware's exception to the Florida continuous ownership

rule. Assuming *arguendo* that an argument regarding the validity of the merger was previously

available to Siegmund, he failed to raise it then, and he is not permitted to raise it now.

---

[2]   He summed up his argument as such: "Here, no notice of the merger was provided to Plaintiff. Given Defendants' apparent self-dealing and waste of the Company's assets in connection with the Transaction, that Defendants did not disclose the merger or provide Plaintiff with notice of the Special Meeting, rendering the merger a *fait accompli*, **application of the exception to the continuous ownership rule is warranted**." [ECF No. 333 at 14] (emphasis added).

Case 0:12-cv-62539-DPG   Document 391   Entered on FLSB Docket 06/08/2016   Page 7 of 12
Case 0:12-cv-62539-DPG   Document 423-2   Entered on FLSB Docket 02/15/2017   Page 7 of 12
Case: 17-10769    Date Filed: 02/16/2017    Page: 26 of 38

Moreover, to the extent Siegmund claims that "newly discovered evidence" justifies reconsideration of the motion to dismiss on this ground, that claim fails. "[W]here a party attempts to introduce previously unsubmitted evidence on a motion to reconsider, the court should not grant the motion absent some showing that the evidence was not available during the pendency of the motion." *Mays v. U.S. Postal Serv.*, 122 F.3d 43, 46 (11th Cir. 1997).

The emails and other documents Siegmund cites as "newly discovered evidence" were all sent or created between September and November 2014. The original motion to dismiss for lack of standing was not filed until ***October 2015***, did not ripen until ***December 2015***, and was not ruled on until ***April 2016***. Siegmund has made no showing that these emails and documents were not available during the pendency of the motion to dismiss or that these emails and documents could not have been discovered with reasonable diligence. The mere existence of this evidence alone does not provide a basis for reconsideration. *See M.G. v. St. Lucie Cnty. Sch. Bd.*, 741 F.3d 1260, 1262 (11th Cir. 2014) ("M.G. has failed to demonstrate that the substantive information contained in the documents upon which she relies was unavailable earlier. M.G.'s letter, the three police reports, and the arrest affidavit all concern incidents that happened—and of which M.G. was aware—***before*** M.G.'s initial complaint was dismissed. Nothing evidences that these police reports—or at least the information contained in the police reports—could not have been discovered earlier with reasonable diligence. Thus, M.G. has failed to demonstrate the existence of 'newly discovered evidence' warranting the district court's reconsideration.").

To the extent any of this evidence was previously included in his opposition to the motion to dismiss, this also does not provide grounds for reconsideration. Again, it is not the Court's burden "to distill every potential argument that could be made based upon the materials before it." *Resolution Trust Corp.*, 43 F.3d at 599. Accordingly, the motion to reconsider the April 11 Order shall be denied.

Case 0:12-cv-62539-DPG   Document 391   Entered on FLSD Docket 06/08/2016   Page 8 of 12
Case 0:12-cv-62539-DPG   Document 423-2   Entered on FLSD Docket 02/15/2017   Page 8 of 12
Case: 17-10769   Date Filed: 02/16/2017   Page: 27 of 38

## II.    APRIL 6 ORDER

On April 9, 2015, Judge Turnoff issued an order granting Siegmund's motion to compel

Xuelian and Wei to respond to requests for production of Linkwell corporate documents. *See*

[ECF No. 265]. Xuelian and Wei filed objections to this order, arguing that they do not have

"control" of the documents under Federal Rule of Civil Procedure 34 because they resigned as of-

ficers and directors of Linkwell more than six months prior to the date Siegmund propounded his

original request for production. After careful consideration, this Court held that "[a] former di-

rector's apparent ability to request documents from his former corporation (or from the appropri-

ate custodian at that corporation) is not the same as the ***right*** to obtain those documents upon

demand or the ability to enforce compliance with that demand" and found that "[b]ecause there is

no legal authority through which the Magistrate Judge could have compelled Xuelian and Wei to

produce documents in the custody of a corporation from which they had long since resigned, the

Order granting the motion to compel is contrary to law," and thereby reversed the Magistrate

Judge's order. Order at 6-7. Siegmund timely filed his motion for reconsideration.

Because the April 6 Order "adjudicate[d] fewer than all the claims or the rights and

liabilities of fewer than all the parties," Fed. R. Civ. P. 54(b), it is interlocutory in nature and, as

such, a district court, in general, "at any time before final decree may modify or rescind it," *John

Simmons Co. v. Grier Bros. Co.*, 258 U.S. 82, 88 (1922). But a district court "possesses" this

"inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause

seen by it to be sufficient" ***only*** "[a]s long as [the] court has jurisdiction over the case." *Flintlock

Const. Servs., LLC v. Well-Come Holdings, LLC*, 710 F.3d 1221, 1225 (11th Cir. 2013) (quoting

*Melancon v. Texaco, Inc.*, 659 F.2d 551, 553 (5th Cir. Unit A Oct. 1981)). Given that the Court

determined in the April 11 Order that it no longer has subject matter jurisdiction over this case,

Case 0:12-cv-62539-DPG   Document 391   Entered on FLSD Docket 06/08/2016   Page 9 of 12
Case 0:12-cv-62539-DPG   Document 423-2   Entered on FLSD Docket 02/15/2017   Page 9 of 12
Case: 17-10769    Date Filed: 02/16/2017    Page: 28 of 38

and given that it also has just denied reconsideration of that order, the Court does not possess the power to reconsider the interlocutory April 6 Order.

Even if the Court *did* have such power to reconsider the April 6 Order, Siegmund's motion for reconsideration would still fail. Siegmund argues that the Court erred by reversing the Magistrate Judge's April 10, 2015, Order without finding any of his factual determinations to be clearly erroneous. [ECF No. 371 at 7-9]. As an initial matter, Siegmund either misread the April 6 Order or misunderstands the standard governing a district court's review of a magistrate judge's non-dispositive pretrial order. *See* April 6 Order at 3 ("Upon review, the district court is required to consider the objections and must set aside any portion of the order found to be 'clearly erroneous *or contrary to law*.'" (emphasis added) (quoting Fed. R. Civ. P. 72(a))); *id.* at 4 ("To the extent that the [magistrate judge's] Order holds that Xuelian and Wei had control over the requested documents such that they could be compelled to produce them under Rule 34, *that ruling is contrary to law* . . . ." (emphasis added)); *id.* at 6 ("Because there is no legal authority through which the Magistrate Judge could have compelled Xuelian and Wei to produce documents in the custody of a corporation from which they had long since resigned, the Order granting the motion to compel *is contrary to law*." (emphasis added) (footnote omitted)). The Court found that the Magistrate Judge's order was contrary to law; reversal was therefore warranted without making any finding that any factual determination by the Magistrate Judge was clearly erroneous.

In fact, there were no factual determinations that this Court even theoretically *could have found* clearly erroneous, because, as this Court stated in the April 6 Order, and as the Defendants have pointed out, the Magistrate Judge was repeatedly and extraordinarily clear in the hearing underlying his order that he made *no* factual findings in issuing his ruling. *See* April 6 Order at 3 ("The Magistrate Judge did not make factual findings.); *see also* [ECF No. 277-1, at 19:3] ("but I am not making any findings"); [*id.* at 25:9] ("And I am not making any findings, at this point");

Case 0:12-cv-62539-DPG   Document 391   Entered on FLSD Docket 06/08/2016   Page 10 of 12
Case 0:12-cv-62539-DPG   Document 423-2   Entered on FLSD Docket 02/15/2017   Page 10 of 12
Case: 17-10769    Date Filed: 02/16/2017    Page: 29 of 38

[*id.* at 25:21-22] ("and I am not making findings or representations"); [*id.* at 27:24] ("I am not

making any findings here."); [*id.* at 31:11] ("and I am not making any findings").

Furthermore, Siegmund's argument that the Court should reconsider its conclusion that

the Magistrate Judge's order was contrary to law is barred. As the Court has already stated, "it is

improper on a motion for reconsideration to ask the Court to rethink what the Court has already

thought through—rightly or wrongly." *Armbuster*, 2016 WL 1441467, at *1 (citation and internal

punctuation omitted). While Siegmund certainly argues with more force that this Court should

have applied his interpretation of "control" under Fed. R. Civ. P. 34, or that Xuelian and Wei's

representation that they were no longer Linkwell directors was somehow deficient in an eviden-

tiary sense, he does nothing more than attempt to relitigate issues the Court has already ruled upon.[3]

Siegmund also argues, referring to the Court's statement from the April 6 Order that

"Plaintiff has not established that the requested information could not be obtained directly from

Linkwell, yet . . . seeks that information from Linkwell's former directors," April 6 Order at 5,

that the April 6 Order "misapprehends or ignores evidence establishing Plaintiff's inability to

obtain discovery from Linkwell," [ECF No. 371 at 10]. The Court recognizes the mistake apparent

in the complained-of statement. As Siegmund dutifully pointed out, the Clerk issued an Order of

Entry of Default against Linkwell on March 24, 2015 [ECF No. 252], and on September 29, 2015,

this Court entered an Endorsed Order adopting the Magistrate Judge's recommendation that

Siegmund's motion for an order of contempt against Linkwell be granted for failure to comply

---

[3] Siegmund makes much in his briefing of his claim that the Court "did not apply relevant precedent to determine
'control,'" in ruling on the Magistrate Judge's order, *e.g.*, [ECF No. 380 at 2], because it did not follow the more
lenient "practical ability" standard announced in *Costa v. Kerzner International Resorts, Inc.*, 277 F.R.D. 468,
471 (S.D. Fla. 2011). But "[a] district court is not bound by another district court's decision, or even an opinion
by another judge of the same district court." *Fox v. Acadia State Bank*, 937 F.2d 1566, 1570 (11th Cir. 1991). The
Court, therefore, was bound to follow only the standard announced by the Eleventh Circuit in *Searock v. Stripling*,
736 F.2d 650 (11th Cir. 1984)—which it did—not the decisions of the *Costa* court or any other district court
utilizing a different standard.

Case 0:12-cv-62539-DPG   Document 391-2   Entered on FLSD Docket 06/08/2016   Page 11 of 12
Case 0:12-cv-62539-DPG   Document 423-2   Entered on FLSD Docket 02/15/2017   Page 11 of 12
Case: 17-10769   Date Filed: 02/16/2017   Page: 30 of 38

with discovery orders [ECF No. 322], *adopting in part* [ECF No. 258].[4] Despite the erroneous account of the procedural history of this case contemplated by the Court's statement, the statement was still no more than *dictum*. The Court did not at all factor it into the conclusion that Xuelian and Wei, as **former** directors of Linkwell, did not have "control" over Linkwell's documents, as required by Fed. R. Civ. P. 34, and as that term has been interpreted by the Eleventh Circuit, *see Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984).

Finally, to the extent Siegmund argues that newly available evidence he attached to his motion, and other "newly available evidence" that he attached to his reply, confirms the allegation that Xuelian and Wei "always maintained control and access to documents sought in the requests," that argument fails. [ECF No. 371 at 11]; [ECF No. 380 at 8-10]. In his motion, Siegmund states that the law firm Sidley Austin—subsequent to an order by the Magistrate Judge on February 10, 2016, granting Siegmund's own motion to compel—"produced certain documents . . . which confirm that Xuelian and/or Wei, at all relevant times, possessed the practical ability to obtain the documents sought in the Requests." [ECF No. 371 at 16]. In his reply, Siegmund states that "in November 2014, almost four (4) months after the effective date of Defendants' resignations, Xuelian executed Statements on Lost Share Certificate ('Statements') on behalf of Linkwell," and attaches emails created on January 14 and 15, 2015, in support of the new allegation that Xuelian and Wei falsely represented to the Court that they had resigned from Linkwell in July 2014. [ECF No. 380 at 8-10].

The Court's analysis in Section I.B., *supra*, applies equally here. Siegmund has made no showing that the documents he contends "confirm" his allegations regarding control were unavailable to him prior to the Court's April 6 Order or that they could not have been discovered with

---

[4]   Notably, when granting the motion to compel against Linkwell, the Court simultaneously denied the motion to compel against Xuelian and Wei, finding that the Magistrate Judge had "correctly determined that the Court's orders against Linkwell could not be properly enforced through those individual defendants, as they are no longer directors of the corporation." [ECF No. 322].

Case 0:12-cv-62539-DPG   Document 391   Entered on FLSD Docket 06/08/2016   Page 12 of 12
Case 0:12-cv-62539-DPG   Document 423-2   Entered on FLSD Docket 02/15/2017   Page 12 of 12
Case: 17-10769   Date Filed: 02/16/2017   Page: 31 of 38

reasonable diligence. *See M.G.*, 741 F.3d at 1262; *Mays*, 122 F.3d at 46. Assuming all of these documents were produced by Sidley Austin in compliance with the Magistrate Judge's February 10, 2016, order, at no time in the weeks between their production and this Court's issuance of the April 6 Order did Siegmund report to the Court that these documents had been produced, nor did he file any briefing (or request therefor) based on the contents of these documents that could have informed the Court's review of the Magistrate Judge's order on the motion to compel.[5] Consequently, the motion to reconsider the April 6 Order shall be denied.

## III.   CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** as follows:

(1)   the Plaintiff's Motions for Reconsideration [ECF Nos. 371 & 373] are **DENIED**;

(2)   Defendants Xuelian Bian and Wei Guan's Motion for Leave to File Sur-Reply to Motion for Reconsideration of Order Granting Dismissal for Lack of Standing [ECF No. 388] is **DENIED AS MOOT**; and

(3)   Defendants Song Qiang Chen; Ling Li; Metamining, Inc.; and Metamining Nevada, Inc.'s Request for Attorneys' Fees and Costs [ECF No. 378] is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 8th day of June, 2016.

DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

---

[5]   Even if Siegmund had provided this documentation ahead of the April 6 Order, he has offered no authority to support his assertion that the general proposition that "a client has a legal right to demand documents from its former or present counsel," [ECF No. 380 at 9] (quoting *Jans ex rel. Jans v. GAP Stores, Inc.*, No. 05-1534, 2006 WL 2691800, at *1 (M.D. Fla. Sept. 20, 2006)), somehow also means that a ***former director*** of a corporation can be required to produce documents in the possession of his ***former corporation's counsel***. This argument both strains credulity and readily ignores the relationship between attorney and client, as well as a corporation's status as a legal entity separate and apart from individual former directors. The fact that Sidley Austin represented Xuelian and Wei in their capacity as directors of Linkwell does not give Xuelian and Wei, ***after*** they resigned from their positions as directors, the legal right to demand Linkwell's corporate documents from Sidley Austin.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-62539-CIV-GAYLES/TURNOFF

FREDERICK SIEGMUND, *derivatively*
*on behalf of* LINKWELL CORPORATION,
             Plaintiff,

        v.

XUELIAN BIAN, et al.,
             Defendants,

        and

LINKWELL CORPORATION,
             Nominal Defendant.

_____/

## ORDER

**THIS CAUSE** comes before the Court on Defendants Xuelian Bian and Wei Guan's

Objections [ECF No. 277] to an Order by Magistrate Judge William C. Turnoff [ECF No. 265]

granting the Plaintiff's motion to compel Defendants Xuelian and Wei to respond to requests for

production [ECF No. 240]. The Court has considered the order, the motion briefs, the objections,

the record, and the applicable law, and is otherwise fully advised in the premises.

## I.    BACKGROUND

The Court recites only the facts pertinent to ruling on the Objections. In this shareholder

derivative action, Plaintiff Frederick Siegmund, on behalf of Linkwell Corporation ("Linkwell"),

alleges that Xuelian and Wei, as directors of Linkwell, breached their fiduciary duties of loyalty,

due care, and good faith by, *inter alia*, causing Linkwell to issue nearly all its equity, assets, and

operation to themselves and the other Defendants for inadequate consideration. The Objections

currently before the Court are just one small part of a lengthy discovery dispute between the parties.

1

Case 0:12-cv-62539-DPG   Document 365   Entered on FLSD Docket 04/06/2016   Page 2 of 7
Case 0:12-cv-62539-DPG   Document 423-3   Entered on FLSD Docket 02/13/2017   Page 2 of 7
Case: 17-10769   Date Filed: 02/16/2017   Page: 33 of 38

Xuelian and Wei became officers and directors of Linkwell in 2005. Xuelian was CEO, President, and Chairman of the Board of Directors, and Wei was Vice President and a member of the Board of Directors. On November 17, 2014, in response to an earlier discovery motion filed by the Plaintiff, Xuelian and Wei filed sworn declarations in which each testified that he resigned from his position as director and officer, effective July 18, 2014. [ECF Nos. 219-1 & 219-2]. They also provided Linkwell's corporate resolutions accepting those resignations.

On January 8, 2015, the Plaintiff served Xuelian and Wei with requests for production (the "Requests"). In their response, filed February 12, 2015, Xuelian and Wei objected to a majority of the Requests seeking Linkwell corporate documents by claiming they do not have any responsive documents in their possession, custody, or control, due to the fact that they had resigned from their executive positions at Linkwell months earlier. On March 11, 2015, the Plaintiff filed a motion to compel Xuelian and Wei to respond to the Requests. [ECF No. 240]. He argued that it was not plausible that Xuelian and Wei, as directors of Linkwell, did not have possession, custody, or control of the Linkwell corporate documents he sought to discover.

Magistrate Judge William C. Turnoff held a hearing on the motion to compel on April 9, 2015. At the hearing, Plaintiff's counsel provided a printout of Linkwell's amended annual report from sunbiz.org (the website for the Florida Department of State, Division of Corporations), dated June 24, 2014, which listed Xuelian and Wei as directors. Based on this, Plaintiff's counsel argued that Xuelian and Wei were still at that time directors of Linkwell. Counsel for Xuelian and Wei, referring to the previously filed declarations, argued that they had resigned as officers and directors of Linkwell months prior to the Plaintiff's Requests and therefore could not produce the corporate documents. The Magistrate Judge noted that there was a probable relationship between Xuelian and Wei and the new directors at Linkwell who might be willing to respond to Xuelian and Wei's requests to obtain the documents (should they be compelled to make them) and further commented

Case 0:12-cv-62539-DPG Document 365 Entered on FLSD Docket 04/06/2016 Page 3 of 7
Case 0:12-cv-62539-DPG Document 423-3 Entered on FLSD Docket 02/15/2017 Page 3 of 7
Case: 17-10769 Date Filed: 02/16/2017 Page: 34 of 38

on the negative inference that could reasonably follow from the fact that they resigned shortly after being served with the complaint.

The Magistrate Judge did not make factual findings, but granted the Plaintiff's motion to compel based on the record before him. He said that it would be up to Xuelian and Wei "to comply and to do everything they can within their power," and he ordered them to either produce the documents within fourteen days or, presumably, the Plaintiff would "move for appropriate consequences." [ECF No. 277-1 at 22-23]. Further, while acknowledging Xuelian and Wei's argument that they could not comply with the requests, the Magistrate Judge determined that there is no reason why they could not request the documents of their former corporation. [*Id.* at 23]. The next day, he entered a written order granting the motion to compel for the reasons stated at the hearing in open court (the "Order"). [ECF No. 265]. Xuelian and Wei filed the instant Objections on April 24, 2015, and the Plaintiff responded (the "Objections"). [ECF Nos. 277 & 289].

## II.     DISCUSSION

### A.     *Standard of Review*

A party may file objections to a magistrate judge's nondispositive pretrial order. Upon review, the district court is required to consider the objections and must set aside any portion of the order found to be "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Holton v. City of Thomasville Sch. Dist.*, 425 F.3d 1325, 1350 (11th Cir. 2005) (citation and internal quotation marks omitted). "A ruling is contrary to law if the magistrate judge has misinterpreted or misapplied applicable law." *Root ex rel. A.R. v. Dudek*, — F. Supp. 3d —, 2015 WL 9311651, at *2 (S.D. Fla. Dec. 18, 2015) (citation and internal quotation marks omitted). "In the absence of a legal

Case 0:12-cv-62539-DPG   Document 365   Entered on FLSB Docket 04/06/2016   Page 4 of 7
Case 0:12-cv-62539-DPG   Document 423-3   Entered on FLSB Docket 02/15/2017   Page 4 of 7
Case: 17-10769   Date Filed: 02/16/2017   Page: 35 of 38

error, a district court may reverse only if there was an 'abuse of discretion' by the magistrate judge." *SEC v. Merkin*, 283 F.R.D. 699, 700 (S.D. Fla. 2012).

### B.      *"Control" of Documents Under Fed. R. Civ. P. 34*

Under Federal Rule of Civil Procedure 34, "control" governs the production of documents. The Eleventh Circuit defines control "not only as possession, but as the legal right to obtain the documents requested upon demand." *Searock v. Stripling*, 736 F.2d 650, 653 (11th Cir. 1984). As the parties do not seem to dispute that Xuelian and Wei do not have ***actual physical*** possession of the requested Linkwell documents, they can be compelled to produce only documents they have the "legal right" to obtain "upon demand." *Id.* The Plaintiff, as the party seeking production of the documents, bears the burden of proving that Xuelian and Wei have such control. *United States v. Int'l Union of Petrol. & Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989), *cited in Costa v. Kerzner Int'l Resorts, Inc.*, 277 F.R.D. 468, 473 n.2 (S.D. Fla. 2011).

"A corporation is a legal entity existing separate and distinct from its shareholders, officers, and directors." *FMC Fin. Corp. v. Murphree*, 632 F.2d 413, 421 (5th Cir. 1980); *see also Whetstone Candy Co. v. Kraft Foods, Inc.*, 351 F.3d 1067, 1074 (11th Cir. 2003) (recognizing that corporations are separate legal entities under Florida law). As a corporation exists separately from its officers and directors, it exists much more separately from its ***former*** officers and directors.

Per their sworn declarations, Xuelian and Wei were no longer officers and directors of Linkwell as of July 18, 2014. The declarations were filed in this action a month and a half prior to the date the Plaintiff served his requests. The sunbiz.org annual report relied upon by the Plaintiff does not rebut the evidence already in the record that Xuelian and Wei were no longer Linkwell directors. Merely holding the status as being the former director of a corporation does not satisfy the "control" standard under Rule 34. To the extent that the Order holds that Xuelian and Wei had control over the requested documents such that they could be compelled to produce them under

4

Case 0:12-cv-62539-DPG Document 365 Entered on FLSD Docket 04/06/2016 Page 5 of 7
Case 0:12-cv-62539-DPG Document 423-3 Entered on FLSD Docket 02/13/2017 Page 5 of 7
Case: 17-10769 Date Filed: 02/16/2017 Page: 36 of 38

Rule 34, that ruling is contrary to law, as it improperly "disregards [Linkwell]'s corporate form and its existence as a distinct legal entity." *Am. Maplan Corp. v. Heilmayr*, 203 F.R.D. 499, 502 (D. Kan. 2001).

In *American Maplan*, the plaintiff, American Maplan Corporation ("AMC"), filed an action against its former president, Heilmayr, alleging that he violated a covenant not to compete when he became the president of a competitor company, Vinyl Extrusion Technologies ("VET"). Heilmayr objected to a discovery order by the magistrate judge granting AMC's motion to compel to the extent that it required him to produce VET's corporate books and records, arguing that he could not be required to produce corporate documents in a suit brought against him personally. The district court agreed with Heilmayr and reversed the magistrate's order, finding that it "effectively ignore[d] the distinction between a corporation, on the one hand, and its officers and shareholders, on the other hand." *Id.* Given that VET was not a sole proprietorship and that AMC had not alleged that Heilmayer was the "alter ego" of VET (nor was there any evidence or allegation that Heilmayer and VET were "essentially one and the same"), the court concluded that AMC "cannot properly seek to obtain from one entity or individual what belongs to another." *Id.*

Although *American Maplan* involved some idiosyncrasies of Texas law limiting the right of access that officers and shareholders have to corporate books and records, the reasoning is still equally applicable here. Whereas in *American Maplan*, the plaintiff was barred from compelling a corporation's president to produce that corporation's books and records, here the Plaintiff—in a situation one step removed—seeks to compel ***former directors*** to produce the books and records of a corporation over which they no longer have control. The Plaintiff has not established that the requested information could not be obtained directly from Linkwell, yet the Plaintiff seeks that information from Linkwell's former directors.

Case 0:12-cv-62539-DPG   Document 365   Entered on FLSB Docket 04/06/2016   Page 6 of 7
Case 0:12-cv-62539-DPG   Document 423-3   Entered on FLSB Docket 02/15/2017   Page 6 of 7
Case: 17-10769   Date Filed: 02/16/2017   Page: 37 of 38

The Plaintiff, in his response to the Objections, contends that "documents have been considered to be under a party's control . . . when that party has the right, authority or practical ability to obtain the materials sought on demand," seemingly in support of the argument that Xuelian and Wei have, at the very least, the "practical ability" to obtain the documents from Linkwell. [ECF No. 289 at 9] (quoting *Costa*, 277 F.R.D. at 470 (citation and internal quotation marks omitted)). Along those lines, the Magistrate Judge considered the potential relationship between Xuelian, Wei, and their replacements on the board of directors at Linkwell in granting the motion to compel because, perhaps, the new directors would be amenable to complying with the requests. But "even under the most expansive interpretation of 'control,' the 'practical ability' to demand production must be accompanied by a similar ability to enforce compliance with that demand." *Klesch & Co. v. Liberty Media Corp.*, 217 F.R.D. 517, 520 (D. Colo. 2003). A possibility that a request *might* be complied with is not the same as "control" under Rule 34. *See Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1427 (7th Cir. 1993) ("[T]he fact that a party could obtain a document if it tried hard enough . . . [or even] if it didn't try hard at all does not mean that the document is in its possession, custody, or control; in fact it means the opposite."). A former director's apparent ability to request documents from his former corporation (or from the appropriate custodian at that corporation) is not the same as the *right* to obtain those documents upon demand or the ability to enforce compliance with that demand.

## III.   CONCLUSION

In sum, the Court finds that the Magistrate Judge's Order "effectively ignores the distinction between a corporation, on the one hand," and that corporation's former directors and officers on the other. *American Maplan*, 203 F.R.D. at 502. Because there is no legal authority through which the Magistrate Judge could have compelled Xuelian and Wei to produce documents in the custody

Case 0:12-cv-62539-DPG   Document 365   Entered on FLSD Docket 04/06/2016   Page 7 of 7
Case 0:12-cv-62539-DPG   Document 423-3   Entered on FLSD Docket 02/13/2017   Page 7 of 7
Case: 17-10769   Date Filed: 02/16/2017   Page: 38 of 38

of a corporation from which they had long since resigned, the Order granting the motion to compel is contrary to law.[1]

Accordingly, the Defendants' Objections [ECF No. 277] are **SUSTAINED** and the Magistrate Judge's Order [ECF No. 265] is **REVERSED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 5th day of April, 2016.

DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

---

[1]   In making his ruling, the Magistrate Judge alluded to the specter of impropriety that seems to arise from Xuelian and Wei's sudden resignations from their positions following service in this suit. But such impropriety has no bearing on either the Requests or the motion to compel, nor does it grant a court the authority to compel two non-directors to produce documents from a corporation over which they no longer have control, and over which they had no control at the time the Plaintiff requested the production. *See Gray v. Faulkner*, 148 F.R.D. 220, 223 (N.D. Ind. 1992) ("The fact that a party may disbelieve or disagree with a response to a discovery request . . . is not a recognized ground for compelling discovery, absent some indication beyond mere suspicion that the response is incomplete or incorrect.").